**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

MARQUIS KINNEL,
     Plaintiff,

     v.                        Case No. 3:26-cv-517 (OAW)

GERRISH, *et al*.,
     Defendants.

## <u>INITIAL REVIEW ORDER</u>

Self-represented Plaintiff Marquis Kinnel, a sentenced inmate imprisoned at MacDougall-Walker Correctional Institution ("MacDougall"),[1] has filed a complaint under 42 U.S.C. § 1983 alleging that eleven MacDougall prison officials violated his rights under federal law.[2]  He seeks damages and declaratory and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity.  28 U.S.C. § 1915A(a).  Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).  In

---

[1] Plaintiff was sentenced in November 2012 and currently resides at MacDougall.  *See* DOC, *Offender Information Search*, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=341411 (last visited May 26, 2026).  The court may take judicial notice of content on this website.  *Taveras v. Semple*, No. 3:15CV00531(SALM), 2023 WL 112848, at *1 n.1 (D. Conn. Jan. 5, 2023).

[2] Plaintiff also asserts state law claims, but the court limits its review under 28 U.S.C. § 1915A to federal law claims because the purpose of initial review order is promptly to determine whether the lawsuit may proceed at all in federal court.  If there are no facially plausible federal claims, then the court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.  On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be addressed in the usual course by way of a motion to dismiss or a motion for summary judgment.

accordance with this statute, the court has reviewed all factual allegations in the complaint and conducted an initial review of the same.  The court's conclusions follow.

## I.    <u>FACTUAL BACKGROUND</u>

The court does not set forth all the facts alleged in Plaintiff's complaint, but provides basic factual allegations to give context to the rulings herein.  All allegations are taken from Plaintiff's complaint, filed at ECF No. 1.

In November 2025, the water in Plaintiff's unit at MacDougall became unsafe to drink and inmates were given bottled water instead.  It apparently took hours for the first two bottles to be delivered, at which time Plaintiff was told that he would receive two additional bottles at breakfast the following day.  But when correctional officers delivered breakfast to Plaintiff the next morning, they did not also deliver any water, telling Plaintiff that "it's not their problem the water wasn't sent down."  ECF No. 1 ¶ 17.

Plaintiff refused to let officers close the "feed trap" in his cell and yelled about the two bottles of water he was supposed to receive with each meal, how he had not received water since the previous day, and how he was a diabetic taking blood pressure medication.  Shortly thereafter, Defendants Gerrish, Cassidy, and Ortiz arrived to work in Plaintiff's unit.  Gerrish and Cassidy expressed their displeasure with Plaintiff's yelling and "acting like a child."  *Id.* ¶ 20.

When bottled water did arrive in the unit, the officers distributed only one bottle to each inmate.  When Plaintiff told Gerrish that inmates were to receive two bottles of water, Gerrish told Plaintiff that only one case of water was delivered and that Plaintiff would be

receiving no water "due to his behavior." *Id.* ¶ 22.  Despite Plaintiff's begging, Gerrish left the unit after giving each inmate, except Plaintiff, water.  Plaintiff began pounding on his cell door, injuring his hand.  When he asked Cassidy and Ortiz for water as they conducted their periodic tours of the unit, they told him that he would receive water when he stopped yelling and closed his feed trap.

Plaintiff received two bottles of water from Gerrish later that morning.  A few hours later, he requested to speak to someone from the Mental Health Department.  Defendant Kumeh, a counselor, came to see Plaintiff.  Plaintiff told Kumeh that he was angry about being mistreated by correctional officers and that he thought his hand was broken from pounding on the door.  Kumeh granted Plaintiff's request to be placed on Behavioral Observation Status ("BOS") because Plaintiff was so angry that he felt he might hurt someone.

Defendant Matthews arrived with other officers to take Plaintiff to a BOS cell, which contained a toilet with blood on it.  Gerrish and Ortiz arrived at the BOS cell to ask Plaintiff if he wanted to have his hand X-rayed.  Plaintiff indicated that he did want an X-ray, but that he did not want Gerrish to take him.  He relented, though, after Gerrish asked Plaintiff if he was refusing.

On the way to the Medical Department, Gerrish and Ortiz placed Plaintiff in a room without cameras.  Ortiz exited the room, leaving Plaintiff alone with Gerrish, who grabbed Plaintiff's penis and profanely threatened that if Plaintiff were to continue in his behavior from that morning, Gerrish would "rip [his] dick off and shove it down [his] throat."  *Id.* ¶ 37.

3

Ortiz then entered the room to resume transporting Plaintiff.  Plaintiff immediately told Ortiz that Gerrish had just sexually assaulted him and that he would like to call the Prison Rape Elimination Act ("PREA") hotline and report the assault to the State Police. Gerrish and Ortiz proceeded with their transport of Plaintiff to the Medical Department, where Plaintiff received X-rays.  Gerrish and Ortiz transported Plaintiff back to the Restrictive Housing Unit ("RHU").

Plaintiff refused to be placed in his cell until he could speak to a lieutenant, call the PREA hotline and the State Police, and have prison staff clean the blood off the toilet in his cell.  Defendants Matthews and Musa, along with other staff, arrived at the RHU to speak with Plaintiff.  Matthews assured Plaintiff that after Plaintiff returned to his cell (after staff finished cleaning the blood from it), Matthews would return to take Plaintiff's written statement and permit him to call the PREA hotline and the state police.

While Plaintiff was in the shower waiting for his cell to be cleaned, Gerrish uncuffed Plaintiff and engaged in a verbal dispute with him.  During that dispute, Gerrish loudly shouted that Plaintiff "is a rapist who likes to break into people['s] houses and rape women."  *Id.* ¶ 45.  Defendant Palumbo came to the shower to take Plaintiff back to his cell, and Plaintiff told him of the "abuse" he'd gone through.  Matthews never returned to Plaintiff's cell.

Plaintiff asserts he informed Defendants Matthews, Musa, Baez, Cassidy, Palumbo, Ellison, Betances, Kumeh, Ortiz, and Dr. Yesu of all the abuse that was being done to him, but they did nothing.  Matthews, Musa, and Betances told Plaintiff that they reviewed video showing that Gerrish did nothing wrong, that there would be no further

4

investigation, and that Plaintiff would have to wait until he left the RHU to call the PREA hotline or the police.  He ultimately did make these calls after he returned from receiving medical treatment at UConn (as his hand indeed was broken).

While in the RHU, Plaintiff "was denied a shower, toothbrush…, toilet paper, and a few other things" for eight-to-ten days pursuant to Kumeh's instructions.

## II.    **DISCUSSION**

Plaintiff brings claims for "sexual assault, sexual harassment, failure to protect, improper use of force, deliberate indifference, cruel and unusual punishment, mental and emotional distress, and violation/denial of due process."[3]  *Id.* ¶ 2.  As a preliminary matter, several of these claims must be dismissed summarily.

First, a claim for mental and emotional distress is not cognizable under Section 1983.  *Chavis v. Syracuse Police Dep't*, No. 8:24-CV-889 (MAD/MJK), 2024 WL 4948681, at *3 (N.D.N.Y. Dec. 3, 2024).  Rather, this claim is "ordinarily brought under state law." *Manson v. Narus*, No. CIV A 3:08CV1(JCH), 2008 WL 4911152, at *4 (D. Conn. Nov. 11, 2008).  Thus, the court declines to review any such claim herein.

Next, Plaintiff's due process claim appears to relate to Defendants' delay in following PREA procedures, but the PREA does not provide for any private cause of action.  *Mims v. Laprey*, No. 3:24-CV-238 (SVN), 2024 WL 3090481, at *6 (D. Conn. June

---

[3] Plaintiff also mentions the word "conspiracy," ECF No. 1 ¶ 12, but this mere mention is insufficient to state a claim. *Harris v. Doe*, No. 3:24-CV-151 (MPS), 2024 WL 1344697, at *3 (D. Conn. Mar. 29, 2024); *Sanchez v. Doe*, No. 3:25-CV-1611 (KAD), 2025 WL 3451583, at *2 n.2 (D. Conn. Nov. 4, 2025).

21, 2024) ("The [PREA] does not confer specific rights or causes of action."). If Plaintiff intends to allege a substantive due process violation, the court finds any such claim to be subsumed by more specific constitutional provisions. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing' such a claim.") (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (explaining that "if a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process").

Finally, there appears to be only one predicate for Plaintiff's claims of sexual harassment, sexual assault, and improper use of force: Gerrish's grabbing of Plaintiff's genitalia. Given this, and the fact that sexual harassment, sexual assault, and improper use of force all are analyzed within the same framework, the court finds these three claims to be duplicative of each other, and therefore consolidates them into a single claim.

Thus, construing the complaint liberally, the court concludes that Plaintiff intends to assert several Eighth Amendment claims. First, a claim for sexual assault. Next, several claims for deliberate indifference to his health safety predicated upon Gerrish calling Plaintiff a rapist, the denial of water, and the denial of toiletries,[4] respectively. And

---

[4] To the extent Plaintiff intends to allege a claim for conditions of confinement based upon the blood on the toilet in his BOS cell, Plaintiff himself states that staff cleaned the cell before returning him there.

last, a claim for Defendants' failure to protect Plaintiff from Gerrish.

To state all of his Eighth Amendment claims, Plaintiff must allege facts sufficient to satisfy both an objective element and a subjective element.  The objective component requires a showing that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."  *Hudson v. McMillian,* 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).  Analysis of the objective component is context specific, requiring review of the conduct alleged against "contemporary standards of decency."  *Id.* at 9 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  The subjective component requires a plaintiff to show that "the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety."  *Edwards v. Quiros*, 986 F.3d 187, 192 (2d Cir. 2021) (quoting *McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020)). "Deliberate indifference is more than negligence—it requires a showing that the prison official 'kn[e]w of, and disregard[ed], an excessive risk to inmate health or safety' from the challenged condition of confinement."  *Id.* (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)) (alterations in original).

The court reviews each claim within this framework, giving due consideration to the specific context of each claim.

### A. Excessive Force/Sexual Assault

The court finds Plaintiff has satisfied both elements with respect to his sexual assault claim.  "Although not 'every malevolent touch by a prison guard gives rise to a

---

Accordingly, this allegation cannot support a claim for an unconstitutional condition of confinement.

federal cause of action,' the Eighth Amendment is offended by conduct that is 'repugnant to the conscience of mankind.'"  *Crawford v. Cuomo*, 796 F.3d 252, 256 (2015) (quoting *Hudson,* 503 U.S. at 9–10).  The United States Court of Appeals for the Second Circuit has "left no doubt that sexual abuse by a corrections officer can give rise to an Eighth Amendment claim."  *Id.* at 257.  The Circuit Court also has left no doubt that squeezing an inmate's genitalia is repugnant.  *Id.* at 258, *see also id.* at 254 ("A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment.").

Here, Gerrish allegedly intentionally grabbed Plaintiff's penis for no penological purpose.  The allegations rather show that the contact was intended to intimidate and humiliate Plaintiff as it was accompanied by a verbal threat.  Accordingly, Plaintiff has stated an Eighth Amendment sexual assault claim.  *See Aigbekaen v. Warden*, No. 3:21-CV-01526 (JAM), 2023 WL 1780390, at *3 (D. Conn. Feb. 6, 2023) (permitting Eighth Amendment sexual assault claim to proceed against correctional officer who grabbed and held plaintiff's penis where the officer's "goal was plausibly to gratify his own desires or humiliate [plaintiff].").  This claim therefore may proceed against Gerrish.

### B. Deliberate Indifference

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones . . . ."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).  A plaintiff asserting an Eighth Amendment claim based upon the conditions of his confinement must show that "he was

denied the minimal civilized measure of life's necessities . . . ." *Edwards*, 986 F.3d at 192 (quoting *McCray*, 963 F.3d at 117). Such deprivation must "pose an unreasonable risk of serious damage to his health," mental and physical. *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). An inmate's conditions of confinement "must be measured by [their] severity and duration, not the resulting injury," though there is no "bright-line durational or severity threshold." *Id.* at 32. Rather, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

### i. *Calling Plaintiff a Rapist*

It is widely acknowledged that increasing the risk of future harm to an inmate can give rise to a constitutional claim, and that identifying an inmate as a rapist, child molester, or snitch may render that individual a target for violence from other inmates. *Dean v. Robinson*, 656 F. Supp. 3d 400, 408 (W.D.N.Y. 2023) ("In the specific context of threats to inmate safety, courts have recognized the viability of a deliberate indifference claim where 'a corrections officer . . . spreads malicious rumors about [an inmate,] if the rumors incited other inmates to assault [him], thereby placing him at grave risk of physical harm.'") (quoting *Mirabella v. Correction Officer O'Keenan*, No. 15-CV-142S, 2016 WL 4678980, at *4 (W.D.N.Y. Sept. 7, 2016)) (alterations in original).

The court finds that Plaintiff has alleged facts sufficient to show that Gerrish sought to endanger Plaintiff by loudly stating that he is a rapist, and thus this claim may proceed against Gerrish for further development. *See, e.g., Dean v. Robinson*, 656 F. Supp. 3d 400, 409 (W.D.N.Y. 2023) (denying summary judgment on an inmate's deliberate

9

indifference claim where defendant called him a rapist in the presence of other inmates); *Lawrence v. Agramonte*, No. 3:19-CV-1498 (VAB), 2020 WL 2307642, at *5 (D. Conn. May 8, 2020) (permitting a claim similar to Plaintiff's to proceed past initial review); *Pagan v. Rodriguez et al.*, No. 3:20-CV-00251 (JAM), 2020 WL 3975487, at *6 (D. Conn. July 12, 2020) (permitting a deliberate indifference claim to proceed past initial review where Plaintiff alleged the defendants labeled him a snitch and a rapist).

### ii. *Deprivation of Water/Toiletries*

According to the complaint, Plaintiff received two bottles of water at approximately 4:00 p.m. on November 18, 2025. Breakfast was served at 7:00 a.m. the next day, but without any water. When water did arrive, Gerrish, Cassidy, and Ortiz refused to give Plaintiff any. But Plaintiff's own allegations show that he was given water at about 7:45 a.m. Thus, sixteen hours elapsed between distributions of water to Plaintiff. Separately, Plaintiff states that he was without a shower, toothbrush, or toilet paper for ten days.

The court presumes that water, a shower, a toothbrush, and toilet paper are "life's necessities," but the temporary deprivations Plaintiff alleges do not satisfy the objective component of an Eighth Amendment claim. *See Beckford v. New York State Off. of Mental Health*, No. 06-CV-00561 (SR), 2010 WL 1816689, at *12 (W.D.N.Y. May 3, 2010) (concluding that an Eighth Amendment claim alleging that the plaintiff went twenty-two hours without water and electricity failed as a matter of law); *Pape v. Cook*, No. 3:20-CV-1324 (VAB), 2021 WL 2186427, at *9 (D. Conn. May 28, 2021) (recognizing that "temporary denials of access to a shower for up to two weeks typically do not constitute a serious deprivation of a basic human need." (collecting cases)); *Fernandez v.*

10

*Armstrong,* No. 3:02-CV-02252 (CFD), 2005 WL 733664, at *5 (D. Conn. Mar. 30, 2005) (finding that the denial of a toothbrush, toothpaste, soap, and shampoo for a period of sixteen days is not a violation of the Eighth Amendment); *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) (noting that the Second Circuit "and other circuits have recognized that deprivation of toiletries, and especially toilet paper, can rise to the level of unconstitutional conditions of confinement . . . [deprivation of such items] for approximately two weeks—while perhaps uncomfortable" did not support an Eighth Amendment claim).  Accordingly, any claim related to the temporary denial of water and hygiene products must be dismissed.[5]

## C. Failure to Protect

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates . . . ."  *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).  A failure to do so may give rise to a constitutional claim.  Such a claim "requires proof of deliberate indifference, which . . . requires showing that the defendant . . . knew of and disregarded a serious risk" to the inmate's safety.  *Calix v. United States*, No. 23-7710-PR, 2024 WL 3263361, at *2 (2d Cir. July 2, 2024). Whether an official had knowledge of a substantial risk of harm is a question of fact that may be demonstrated by circumstantial evidence *Farmer*, 511 U.S. at 842.

---

[5] The court has considered whether these deprivations were done in bad faith, that is, with the intention to cause harm, such that it might constitute a per se constitutional violation.  *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999).  But there is nothing in the complaint to indicate that Defendant Kumeh's instructions to withhold most toiletries while Plaintiff was on BOS was done in bad faith.

Plaintiff does not specify the harm he was exposed to, but the court infers that he intends to assert that he was not protected from Gerrish's assault. As to most of the other defendants, there is nothing in the complaint from which a reasonable factfinder could infer foreknowledge of the risk Gerrish posed to Plaintiff. He does assert that he asked for Gerrish not to touch him when he was taken to the BOS cell, but that fact alone does even not show that Plaintiff himself felt that Gerrish posed a risk to his safety. Rather, it appears to show that Plaintiff was feeling hostile toward Gerrish. And it certainly does not show that any of the other defendants were on notice that Gerrish might harm him. Thus, this claim must be dismissed as to almost all of the defendants.

The only exception to dismissal is Defendant Ortiz, who apparently took a detour to a room without cameras while escorting Plaintiff to the medical department, where he left Plaintiff alone with Gerrish, only to return after Gerrish had accomplished the assault. One reasonably might infer that this conduct is explicable only by Ortiz's knowledge that Gerrish wished to intimidate or harm Plaintiff in some way. This is sufficient to carry this claim past initial review. Accordingly, the court will allow the failure-to-protect claim to proceed against Ortiz only.

### D. Personal Involvement

The court finds that Plaintiff has failed to state any claim against any of the other defendants. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995)) (internal quotation marks

omitted).  Other than Gerrish and Ortiz, none of the defendants are alleged to have had any personal involvement in the constitutional violations discussed supra.

Plaintiff generally alleges that he made "Matthews, Musa, Baez, Cassidy, Palumbo, Ellison, Betances, Kumeh, Ortiz, and Dr. Yesu aware of all the abuse that was being and had been done to" him, but that they "failed to take action."  ECF No. 1 ¶ 48. But this bald conclusion cannot sustain a constitutional claim against any of these defendants.  In the first instance, it is not clear how he informed these individuals of his abuse, or what action anyone ought to have taken.  He allegedly told Defendant Kumeh that he was upset about not receiving water, and was permitted, upon Kumeh's instruction, to remove to a different cell to calm down.  He allegedly told Ortiz and Matthews that Gerrish had assaulted him, and he says that Matthews failed to get his statement although he promised he would, but an inmate does not have a right to an investigation into officer misconduct.  *See Yaseen v. Bristol Polce Dep't.*, No. 3:23-CV-1042 (OAW), 2024 WL 4349053, at *4 (D. Conn. Sept. 30, 2024) (noting that "it is well established that '[t]here is no . . . constitutional right to an investigation by government officials.") (quoting *Troy v. City of New York*, No. 13-cv-5082 (AJN), 2014 U.S. Dist. LEXIS 136339, 2014 WL 4804479, * 6 (S.D.N.Y. Sept. 25, 2014)) (alterations in original); *see also Gilliam v. Black*, No. 3:18CV1740 (SRU), 2019 WL 3716545, at *5 (D. Conn. Aug. 7, 2019) (noting that "district courts have routinely held that there is no private right of action for inmates to sue prison officials for non-compliance with the PREA" and collecting cases); *Jones v. Forbes*, No. 3:16CV14 (VAB), 2016 WL 4435081, at *3 (D. Conn. Aug. 19, 2016) (concluding that a warden's failure to call the state police to report an inmate's

13

allegations of sexual assault does not constitute a constitutional violation).  And Plaintiff did apparently make his call to the PREA hotline within days of the assault.  Finally, he alleges that he told Palumbo about Gerrish yelling he was a rapist, but he apparently did not ask Palumbo for any remedy, and the court does not know what remedy might have been possible.

Thus, the court concludes that Plaintiff has failed to state any claim againse Defendants Matthews, Musa, Baez, Cassidy, Palumbo, Ellison, Betances, Kumeh, Ortiz, and Dr. Yesu, and they all must be dismissed from this action.

### E.  Injunctive/Declaratory Relief

In addition to damages, Plaintiff seeks injunctive relief ordering Defendants to provide better living conditions and to provide officers with better training in how to respond to sexual assaults and But "a state official acting in his or her official capacity may be sued only for prospective injunctive relief from ongoing violations of federal law." *McKeown v. N.Y. State Comm'n on Jud. Conduct*, 377 F. App'x 121, 123 (2d Cir. 2010). Because Plaintiff's complaint does not allege any ongoing constitutional violation, any claim for injunctive relief must be dismissed.

### F.  Declaratory Relief

Plaintiff also seeks a declaration that Defendants' actions violated his constitutional rights. But "if Plaintiff were to prevail on any constitutional claim proceeding in this action, a judgment in his favor would serve the same purpose as a declaration that Defendants violated his constitutional rights." *Petion v. Pearson*, No. 3:22-CV-1647 (OAW), 2023 WL

14

6050054, at *4 (D. Conn. Sept. 15, 2023).  Accordingly, any claim for declaratory relief must be dismissed.


IV.    **CONCLUSION**

For the reasons stated above, it hereby is ordered as follows:

1.  The following claims may proceed for further development:

    a.  An Eighth Amendment claim for sexual assault against Defendant Gerrish,

    b.  An Eighth Amendment claim for deliberate indifference against Defendant Gerrish, and

    c.  An Eighth Amendment claim for failure to protect against Defendant Ortiz.

2.  All other claims are dismissed as implausible.

3.  Defendants Matthews, Musa, Baez, Cassidy, Palumbo, Ellison, Betances, Kumeh, Ortiz, and Dr. Yesu are dismissed.  The Clerk of Court is asked to please terminate these defendants from this action.

4.  Plaintiff may amend the complaint on or before **August 1, 2026.  An amended complaint, if filed, will completely replace the complaint, and the court will not consider any allegations made in the original complaint in evaluating any amended complaint.**  The court will review any amended complaint to determine whether it may proceed to service of process.

5. If Plaintiff wishes to proceed only on the claims noted above, he may file a notice on the docket saying so, at which point the case immediately will proceed to service. If nothing is filed on the docket by **August 1, 2026,** the court will presume Plaintiff wishes to proceed only on these claims.

6. If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the court.  Failure to do so can result in dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify Defendant or defense counsel of his new address.

7. Plaintiff shall utilize the Prisoner Electronic Filing Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.  Under local court rules, discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendant's counsel by regular mail.

IT IS SO ORDERED at Hartford, Connecticut, this 1st day of June, 2026.

_____/s/_____

Omar A. Williams
United States District Judge

16